Jackson D. MAGENAU, Administrator of the Estate of Norman Ormsbee, Jr., Deceased,

v.

ÆTNA FREIGHT LINES, Inc., Appellant.

No. 12518.

United States Court of Appeals Third Circuit.

Argued May 8, 1958.

Decided July 17, 1958.

Rehearing Denied Aug. 14, 1958.

John E. Britton, Erie, Pa. (W. F. Illig, of Gifford, Graham, MacDonald & Illig, Gerald J. Weber, John M. McLaughlin, Erie, Pa., on the brief), for appellant.

M. Fletcher Gornall, Jr., Erie, Pa. (Magenau & Gornall, William W. Knox, Erie, Pa., on the brief), for appellee.

Before MARIS, GOODRICH and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

█ This is an appeal from the District Court for the Western District of Pennsylvania upon a judgment entered in a death by wrongful act case in favor of the administrator of Norman Ormsbee, Jr. The recovery was based on the alleged negligence of the defendant and there was also a finding by the jury that the defendant was guilty of "wanton conduct." The defendant attacks the verdict and judgment on several grounds. The case is in federal court by diversity only and we look to the relevant Pennsylvania decisions.

The first question involves points of tort and agency law. The driver of the truck which was leased to the defendant, Aetna Freight Lines, Inc., had been encountering difficulties while enroute to Midland, Pennsylvania. A day or two prior to the accident there had been brake trouble which defendant's superintendent at Buffalo had endeavored to adjust. On the afternoon of the day in question the driver, Schroyer, stopped

at Jones's Tavern at Waterford, Erie County, Pennsylvania. There he complained to the proprietor that he was having trouble with his brakes. Shortly thereafter the decedent, Ormsbee, and a man named Herbert Brown, entered the tavern. Schroyer offered Brown $25 if he would accompany him on the remainder of the trip to Midland stating that he, Schroyer, was afraid he was going to run into trouble. Brown declined the offer. Schroyer thereupon asked Ormsbee to accompany him and he agreed to for the price of $25. The two men got into the tractor. This was the last time they were seen alive. Later that evening state police received a call and in answer thereto found the tractor-trailer off the highway over an embankment and both men dead. This is all the evidence we have except further details of the difficulties which the driver had had with this truck in the earlier part of his trip and the results of a post accident investigation.

The jury was given forthright interrogatories on this phase of the case. They are, with the answers thereto, as follows:

1. "Under the evidence in this case, do you find that an unforeseen contingency arose which made it reasonably necessary for the protection of the defendant's interests that the driver Charles Schroyer engage the decedent Norman Ormsbee, Jr. to accompany him for the remainder of the trip?" Answer: "Yes."

2. "Was the defendant Aetna Freight Lines, Inc. negligent in the maintenance of the equipment or in the operation of the vehicle by the driver Charles Schroyer, either or both, which negligence was the proximate cause of the death of Norman Ormsbee, Jr.?" Answer: "Yes."

3. "Do you find that the braking equipment upon the vehicle in question, considering its size and load and road conditions prevailing, was in proper working order on March 20, 1956?" Answer: "No."

The answer to the first question is attacked by the defendant as being based on insufficient evidence.

■■ The rule of law governing the situation is not so difficult. It is stated in the Restatement as follows:

"If a servant is authorized or apparently authorized to invite persons upon the vehicle * * * of the master, a person so invited is a guest of the master and if the entry is for business purposes, he is a business visitor." 1 Restatement, Agency 2d § 242, com. *b* (Tent. Draft No. 4, 1956) (not in 1st ed.).

"Unless otherwise agreed, an agent is authorized to appoint another agent for the principal if:

" * * *

"(d) an unforeseen contingency arises making it impracticable to communicate with the principal and making such an appointment reasonably necessary for the protection of the interests of the principal entrusted to the agent." 1 Restatement, Agency 2d § 79(d) (Tent. Draft No. 3, 1955) (same as in 1st ed.). See also illustration 5 to this section (ill. 6 in the 1st ed.).

The Pennsylvania cases emphasize the necessity of the "emergency." See, e. g., Jaeger v. Sidewater, 1951, 366 Pa. 481, 77 A.2d 434; Jacamino v. Harrison Motor Freight Co., 1939, 135 Pa.Super. 356, 5 A.2d 393.

Thus the matter turns in the final analysis on a question of fact, that is, a sufficient state of emergency to justify the enlisting of another to help assist in the business to be done.

■ The jury's finding is a forthright answer to a forthright question. The trial judge who heard all the testimony was satisfied with it. We do not think on this state of the record that we would be justified in setting it aside.

■ The defendant strongly urges the proposition that if the evidence is

sufficient to sustain the conclusion that there was an emergency situation to justify the conclusion that Schroyer had authority to employ Ormsbee to assist him, then the Pennsylvania Workmen's Compensation Act will be the sole basis for recovery. In rejecting this contention, the trial judge relied upon D'Alessandro v. Barfield, 1944, 348 Pa. 328, 35 A.2d 412. That was a case involving the "statutory employee" section of the statute, § 203, 77 Pa.Stat.Ann. § 52 (Purdon 1952).[1] The Pennsylvania court said that § 203 was not involved, since the accident had occurred outside the employer's premises. There had been a judgment for the plaintiff in the trial court and the affirmance let this stand, the court saying that the "sole question" for its consideration was whether § 203 applied.

But D'Alessandro does not settle the argument of the defendant. It points out the definition of "employee" in § 104 of the statute[2] which includes "All natural persons who perform services for another for a valuable consideration, *exclusive of persons whose employment is casual in character, and not in the regular course of the business of the employer * * *.*" (Emphasis added.)

█ It is the exclusion part of the paragraph with which we are here concerned. Defendant concedes that the employment of Ormsbee was "casual," a correct concession as the discussion and authorities cited in Skinner will show.[3] But to be outside the coverage of the act, the employment must both be casual and not in the regular course of business.

The Pennsylvania Supreme Court has said that both conditions must be met. Persing v. Citizens' Traction Co., 1928, 294 Pa. 230, 144 A. 97, is right in point. See, also, Booth v. Freer, 1938, 133 Pa. Super. 594, 3 A.2d 205; Sones v. Thompson Furniture Co., 1948, 163 Pa.Super. 392, 62 A.2d 116. "The regular course of business means an ordinary operation which may be required to carry out the master's work," said the court in the Persing case. [294 Pa. 230, 144 A. 100.] This question, Skinner declares is "a question of law, and open to review."[4] We cannot escape the conclusion that the finding that authorized the hiring of Ormsbee put him into the regular business of the defendant, namely, transportation of goods by truck. If that was not what he was doing, he had no business riding with Schroyer at all.

Facts in the various cases applying the phrase vary widely, as one would expect. We are helped by the statement of principle in Callihan v. Montgomery, 1922, 272 Pa. 56, 72, 115 A. 889, 895, "The Legislature evidently intended, by the use of the words 'regular course,' to give them some definite significance, and the most natural meaning is that they refer to the normal operations which regularly constitute the business in question, excluding incidental or occasional operations arising out of the transaction of that business * * *."

That, we think, is this case. The other matters raised do not require separate discussion.

The judgment of the district court will be reversed.

---

1. "An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe."

2. 77 Pa.Stat.Ann. § 22 (Purdon 1952).

3. 1 Skinner, Pennsylvania Workmen's Compensation Law 100-10 (4th ed. 1948, Supp. 1953).

4. Id., at page 100 & note 90. See, e. g., Ciccocioppo v. Rocco, 1953, 172 Pa. Super. 315, 94 A.2d 77.